# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARAMELCRISP LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>AISHA PUTNAM,<br><br>    Defendant. | Case No. 19 C 2699<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANUDM OPINON AND ORDER AND REPORT AND RECOMMENDAITON

Plaintiff CaramelCrisp LLC ("CaramelCrisp") brings this lawsuit against its former employee Aisha Putnam ("Putnam"), alleging misappropriation of its trade secrets and other confidential information under the Defend Trade Secrets Act and Illinois Trade Secrets Act as well as breach of a Confidentiality and Non-Compete Agreement dated on or about October 22, 2015 (the "2015 Agreement"). Putnam now moves for sanctions based on CaramelCrisp's alleged failure to preserve electronic evidence. In her motion, Putnam argues that CaramelCrisp engaged in spoliation of evidence and she seeks dismissal of CaramelCrisp's breach of contract claim for "improper deletions" or alternatively, an adverse inference instruction and an award of the attorneys' fees and costs she incurred because of the alleged wrongdoing. In addition to full briefing on the issue, the Court heard oral argument on March 16, 2022. For the reasons that follow, the Court recommends that Putnam's motion for sanctions [169] be denied as to her requests for potentially dispositive relief, namely dismissal of part of CaramelCrisp's breach of contract claim and an adverse inference instruction. The remainder of the relief sought by Putnam

in her sanctions motion, including her request for attorneys' and costs, is non-dispositive, and for the reasons stated below, is denied. Putnam's Motion to Strike [180] is also denied.[1]

## I. BACKGROUND

CaramelCrisp does business under the name Garrett Popcorn Shops and sells gourmet popcorn both domestically and internationally. Putnam worked in CaramelCrisp's Research & Development department from March 2014 through March 2019. She was its Director of Research and Development from February 2015 through March 7, 2019. CaramelCrisp provided Putnam with a laptop for use while she was employed there. CaramelCrisp alleges that in her capacity as Director of Research and Development, Putnam had access to its trade secrets and most highly confidential and proprietary information, including its secret popcorn recipes.

On March 7, 2019, CaramelCrisp terminated Putnam's employment for a reason unrelated to this case. Doc. 176-1 at 70 (Putnam Deposition), 148:5-15. Upon notice of her termination, Putnam delivered her laptop to Kara Nickels, CaramelCrisp's Vice President of Human Resources. As was standard company practice, CaramelCrisp's then Senior Analyst – Team Lead, Technology, Wally Neumann ("Neumann"), worked with Putnam's supervisor to consolidate Putnam's user data. Doc. 176-1 at 120 (Neumann Deposition), 69:1-69:19. According to CaramelCrisp, Putnam was aware of her pending termination several days prior to being formally terminated. CaramelCrisp alleges that as part of Neumann's analysis, he discovered that on or about March 5, 2019, Putnam: (1) sent "herself emails with attachments containing vast amount

---

[1] The portions of the decision that reject a sanction of dismissal and an adverse inference instruction, which could be considered dispositive depending on the nature of the instruction, should be considered a report and recommendation to the district judge. *See* 28 U.S.C. § 636(b)(1)(B). The Court resolves the remainder of the motion, including the request for attorneys' fees and costs, and Putnam's motion to strike as a memorandum opinion and order because they are non-dispositive matters. *See Cage v. Harper*, 2020 WL 1248685 (N.D. Ill. March 16, 2020); 28 U.S.C §636(b)(1)(A).

2

of CaramelCrisp's confidential information and trade secrets[,]" including recipes, batch pricing, product weights, production processes, development and distribution agreements, supplier information, customer services reports and market research and (2) deleted "substantially all of the data on her computer" as well as the trash folder and recovery folder in violation of the terms of the 2015 Agreement. Cmplt. at ¶¶ 21-23.[2]

As a result, Nickels contacted Putnam via email on March 22, 2019. Putnam states that Nickels told her that she "needed to be [] concerned about violating [her] contract with CaramelCrisp and accused [Putnam] of emailing confidential documents to [herself] before [her] termination." Doc. 176-1 (Putnam Declaration) at 30, ¶ 26. In response, Putnam says she immediately forwarded to Nickels five emails she had sent to herself and assured Nickels that it was her intention to comply with the terms of the 2015 Agreement. *Id*; Answer at ¶ 24. CaramelCrisp alleges that subsequent to this exchange, it learned that Putnam had "copied and misappropriated more than 5,400 files containing 3 gigabytes of its data onto a personal USB drive and taken that USB with her after termination of her employment." Cmplt. at ¶ 25; *see also id*. at ¶¶ 21, 26. Also on March 22, 2019, Neumann sent Nickels an email asking Nickels about placing a "litigation hold" on Putnam's account and indicating that he was "revok[ing] access from David [Putnam's supervisor] in the meantime so nothing is disturbed in the account and IT will no longer access it directly, only via logs and searches on the backend when requested." Doc. 184 at 2.

Six days later, on March 28, 2019, CaramelCrisp's counsel sent Putnam an email demanding that Putnam "make available to a third party forensic expert all electronic devices that have had any of the Company's confidential or trade secret information on them during [her] employment as well as those used since [her] date of termination." Answer at ¶¶ 27, 28.

---

[2] At his deposition, Neumann testified that he was able to restore all the deleted files that had been synced with OneDrive. Doc. 176-1 at 124, 84:13-84:17.

CaramelCrisp's counsel also stated that the forensic expert would permanently delete any confidential or trade secret information that was on the devices. *Id*. at ¶ 28. In addition, CaramelCrisp demanded that Putnam provide an affidavit affirming that she had not disclosed its confidential information and trade secrets to anyone and that she would not do so in the future. *Id*. at ¶ 29. In response to CaramelCrisp's demands, Putnam hired counsel and provided an affidavit in which she represented that she deleted the information (as defined by the 2015 Agreement) in her possession. *Id*. at ¶ 30. Putnam refused to allow CaramelCrisp to conduct a forensic review of her electronic devices, email and cloud accounts. *Id*. at ¶ 31.

Based on these factual allegations, CaramelCrisp filed a three-count complaint against Putnam on April 22, 2019, asserting violations of the Defend Trade Secrets Act (Count 1) and Illinois Trade Secrets Act (Count II) and breach of the 2015 Agreement (Count III). Among other things, CaramelCrisp alleges that starting on or about March 5, 2019, "Putnam improperly [] began deleting all the data on her computer in clear violation of the 2015 Agreement. Not only did she delete substantially all of the data on her computer, [but] she also deleted the trash folder and recovery folder." Cmplt. ¶ 22; *see also id*. at ¶¶ 19, 24, 32. CaramelCrisp's breach of contract claim is based in part on Putnam's "deleting [i]nformation from her computer." *Id*. at ¶ 71.

On May 2, 2019, after filing its complaint, CaramelCrisp turned over Putnam's laptop to Berkeley Research Group ("Berkeley"), an independent forensic expert.[3] On May 3, 2019, William Poirier ("Poirier") from Berkeley created a forensic image of the laptop. Putnam retained her own expert, Allan Buxton ("Buxton") from Secure Data Digital Forensics, to examine the forensic image that Berkeley had made of Putnam's laptop as well as a flash drive she used in

---

[3] Neumann states that after analyzing Putnam's work-issued laptop for deletions and restoring files that could be recovered, the laptop was placed in a locked desk drawer until it was turned over to Berkeley. Doc. 176-1 at 141 (Neumann Decl.), ¶¶ 13-15.

connection with her employment with CaramelCrisp. Doc. 170-2 (Buxton Affidavit) at ¶ 5. On October 14, 2021, Buxton examined a forensic image of the laptop and provided a report of his findings on November 2, 2021. *Id*. at ¶ 6. Buxton found that Putnam "did not delete substantially all of the data on her computer." *Id*. at ¶¶ 7-9.

Buxton additionally found that CaramelCrisp deleted hundreds of files from the laptop after March 8, 2019. Doc. 170-2 (Buxton Aff.) at ¶¶ 13-15. Buxton also determined that CaramelCrisp failed to use "best practices" when working with the computer after Putnam's termination, "which irreparably altered the laptop so that it no longer reflected its original state on March 8, 2019," the day after her termination. *Id*. at ¶¶ 11-22. Specifically, in addition to deletions, Buxton found that CaramelCrisp violated best practices by: (1) failing to mandate the initial preservation of the storage device in question in order to preserve the original device and its contents in the state it was in at the time it was collected; (2) accessing or changing approximately 39,342 files after March 8, 2019; (3) failing to take steps to mitigate the "garbage collection" process after March 8, 2019; and (4) continuing to log on under Putnam's account when accessing the laptop after March 8, 2019. *Id*. at ¶¶ 12, 16-20. Regarding the third item, Buxton describes garbage collection as a "process unique to solid-state disks that sets all values of its unused areas to a specific value, resetting it to hold new contents in the future," which "has the unfortunate effect of rendering previously deleted data unrecoverable." *Id*. at ¶ 17. According to Buxton, the "more its host device is used, the more likely garbage collection is to occur, or reoccur." *Id.* at ¶ 18. Buxton explains that CaramelCrisp failed to mitigate the "garbage collection" process by failing to promptly create a forensic image of the laptop and examining the image rather than the device itself. *Id*. at ¶ 19. Buxton also states that by performing its analysis of Putnam's actions, while logged in under her account, CaramelCrisp "create[d] more complications than just garbage collection." *Id*. at ¶ 20.

Based on Buxton's opinions, Putnam argues that CaramelCrisp irreparably altered the laptop computer she used while employed at CaramelCrisp in a manner that renders it unreliable evidence.

Putnam now claims that sanctions are warranted because CaramelCrisp destroyed evidence and failed to follow best practices after it knew that it intended to file this lawsuit. In her motion, Putnam argues that the appropriate sanction is dismissal of CaramelCrisp's breach of contract claim for "improper deletion." Doc. 169. Alternatively, Putnam seeks the following relief: (1) an adverse inference instruction stating that a forensic image of the laptop created at the time of her termination would have demonstrated that she did not delete any information from the laptop; (2) barring CaramelCrisp from introducing testimony from a Berkeley employee regarding conclusions about the state of the laptop at the time of Putnam's employment based on their analysis of the forensic image created on May 3, 2019; and (3) an award of attorneys' fees and costs incurred in moving for sanctions. Doc .169; Doc. 170 at 9-11.

In response, CaramelCrisp admits that several files on Putnam's laptop were accessed or modified after March 8, 2019 but explains that any modifications to her work computer were part of an effort to recover evidence, not destroy it. CaramelCrisp argues that sanctions are unwarranted based on its handling of Putnam's work laptop after her termination. In particular, CaramelCrisp asserts that: (1) no duty to preserve was breached; (2) Putnam was not prejudiced because she failed to show that CaramelCrisp destroyed any relevant electronically stored information ("ESI"); (3) Putnam failed to show that its deletion of ESI was done in bad faith; and (4) the observations of Berkeley are unaffected by any of the issues raised by Putnam's sanctions motion. For the reasons that follow, the Court finds that sanctions are not warranted because Putnam has not established that there was a breach of the duty to preserve. Once the duty to

preserve was triggered, Putnam has not established that the ESI that was lost is in any way relevant to the parties' claim or defenses in this action.

## II. DISCUSSION

A.  **Putnam's Motion to Strike**

As a preliminary matter, the Court considers Putnam's motion to strike, which asks the Court to exclude portions of the deposition testimony and declaration of Neumann cited in CaramelCrisp's response to her motion. Putnam claims that various portions of Neumann's testimony and declaration are undisclosed expert "opinions based upon his purported understanding of data forensics." Doc. 180 at 2. Putnam argues that Neumann's opinion testimony should be stricken because he was not disclosed as an expert witness in CaramelCrisp's Rule 26 disclosures. CaramelCrisp did not serve a Rule 26(a)(2)(A) disclosure regarding Neumann but insists that Neumann is testifying as a lay witness, not as an expert. CaramelCrisp contends that the challenged statements are factual statements based on Neumann's first-hand knowledge or at most, limited to lay opinions which are admissible under Rule 701 of the Federal Rules of Evidence.

"Rule 26(a)(2)(A) requires a party to disclose the identity of a witness who will present expert testimony under Federal Rule of Evidence 702." *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951 (7th Cir. 2018). By definition, expert testimony is based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). Under Rule 37(c)(1), a party that fails to identify a witness as required by Rule 26(a) may not use that witness to supply expert testimony "on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Federal Rules of Evidence allow for opinion testimony from both lay and expert witnesses. Rule 701 allows for lay witnesses to give opinion testimony when such testimony is

7

"(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "The rule is a sensible elaboration of Rule 602, which requires that a lay witness's testimony be based on personal knowledge." *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990). The Seventh Circuit allows lay opinion testimony based on personal observations of what a witness can "'rationally' opine in light of his or her work experience." *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 614 (7th Cir. 2017). Testimony under Rule 701 is not subject to the disclosure requirements of Rule 26(a)(2)(A). Fed. R. Civ. P. 26(a)(2)(A).

Putnam moves to strike lines 72:1-74:2, 78:9-79:24, 84:5-85:4, 96:7-96:16, and 130:1-132:7 of Neumann's deposition and paragraphs 10-14 of his declaration because CaramelCrisp did not disclose him as an expert witness. Doc. 180 at 2. However, Putnam does not describe the precise content of any of the testimony she seeks to strike or explain why it amounts to expert opinion versus mere facts or lay opinion testimony. And she cites no case law to support her view. Without any specific analysis or reasoning in support of her motion, Putnam has not demonstrated that the challenged portions of Neumann's deposition and declaration should be stricken because they contain undisclosed expert opinion.

Nonetheless, having reviewed the content of Neumann's actual testimony and statements, the Court finds that almost all of it more closely resembles statements of fact based on his personal examination of Putnam's laptop device. Neumann is currently Vice President of Technology for CaramelCrisp and he has approximately eight years of experience in its Information Technology department. Doc. 176-1 at 140 (Neumann Decl.), ¶ 2. Neumann states that in 2019, he was the Senior Analyst – Team Lead, Technology for CaramelCrisp. *Id*. at ¶ 3. He explains that in that

8

role, he regularly interacted with CaramelCrisp employees regarding their use of the company's computers and technology resources. *Id*. He continues to do so as the Vice President of Technology. *Id*. Neumann further states that he is very familiar with the computer hardware, software, cloud infrastructure and other network systems used at CaramelCrisp. *Id*. at ¶ 4. Neumann testified at his deposition that he has several professional technology-based certifications from Apple and Microsoft, including certifications as a cloud engineer, DevOps engineer, and for Azure architecture. Doc. 176-1 at 105, 8:16-9:18.

In his deposition and declaration, Neumann testified about: (1) his own personal observations of deleted emails in Putnam's account and a "ballpark idea" of how many emails were deleted by Putnam (pp. 72:1-74:2); (2) how to purge deleted emails from Outlook and his personal observation of the deleted items in Putnam's email account (pp. 78:9-79:24); (3) how OneDrive has a failsafe for deletes that retains data for over 90 days and that he personally restored files Putnam deleted from OneDrive (pp. 84:5-85:4); (4) his personal observations of the desktop on Putnam's computer and that the desktop on Putnam's computer was not backed up to OneDrive (pp. 96:7-96:16); (5) Putnam's files he personally could not restore because they were not backed up to OneDrive, turning over Putnam's computer to Nickels, and then giving it to Berkeley (pp. 130:1-132:7); (6) how the "Marketing Drive" and "Production Drive" files at CaramelCrisp are stored on a SharePoint system (Decl. ¶ 10); (7) the location of seven files that were deleted from Putnam's laptop on March 27, 2019 in the "Production Drive" of SharePoint folders, that a dozen other users had access to those files, and that a deletion or modification of a file on SharePoint will be reflected on the computers of other users who have shared access to the same files (Decl. ¶¶ 11, 12); and (8) what he personally did and did not do with the files on Putnam's laptop computer after she was terminated, including restoring files from her OneDrive account (Decl. ¶¶ 13, 14).

9

Much of the challenged testimony relates to what Neumann did and did not do with Putnam's laptop computer after her termination. In this regard, Neumann is a fact witness who testified about his personal observations of deletions of files from Putnam's email account, OneDrive account, and hard drive after her termination and his subsequent restoration of her OneDrive account. Accordingly, the Court concludes that Neumann's personal observations based on his examination of Putnam's laptop computer, his knowledge of the location of files in CaramelCrisp's network system, and the actions he took do not constitute expert opinion testimony. *See Slep-Tone Entertainment Corp. v. Coyne*, 141 F.Supp.3d 813, 818 (N.D. Ill. Sept. 30, 2015) (declaration by plaintiff's founder did "not contain expert testimony, but rather [his] personal observations and opinions about [] his own inspection of the file on [defendant's computer] drives" and he is "perfectly competent under Federal Rules of Evidence 602 and 701 to testify on those matters."); *Williamson v. S.A. Gear Co., Inc.*, 2018 WL 1556281, at *6 (S.D. Ill. Mar. 29, 2018) (Under Rule 701, a senior employee who "clearly possesse[d] sufficient personal and particularized knowledge" permitted to testify about knowledge of employer's business and involvement with discovery in the case). Whether Neumann's few statements generally about how Outlook, SharePoint, and OneDrive function constitute expert testimony may require more discussion, but the Court need not address that issue because the objected-to statements are not critical to resolution of the spoliation issue.[4] As discussed below, the undisputed record establishes that only seven files were deleted after the duty to preserve arose and Putnam has not demonstrated, or even claimed, that those identified files are relevant to this case. As a result, the Court finds it unnecessary to strike the portions of Newmann's deposition and declaration regarding Outlook,

---

[4] The Court also agrees with CaramelCrisp that Neumann's testimony about who owns certain intellectual property on an employer's computer comes closer to resembling expert testimony but is irrelevant to the motion for sanctions. Doc. 185 at 3; Doc. 176-1 at 130:15-131:1.

10

SharePoint, and OneDrive because it has not relied on them as to the ultimate issue of whether Rule 37(e) sanctions are warranted.

For all these reasons, the Court will not strike the challenged portions of Neumann's deposition testimony and declaration statements based on the current factual record and for purposes of ruling on the pending sanctions motion. Of course, the district judge may revisit the question of whether particular statements by Neumann amount to expert testimony at a later date if it becomes relevant for purposes of summary judgment or at trial.

**B.     Putnam's Motion for Sanctions**

Turning to the merits of the spoliation question, the Court next assesses whether Putnam is entitled to sanctions under Rule 37(e). Putnam moves generally under Rule 37 and the court's inherent authority for sanctions against CaramelCrisp for spoliation of evidence, contending that it destroyed ESI and failed to use best practices when working with her CaramelCrisp-issued laptop after her termination, which irreparably altered the laptop so it was no longer a reliable copy. Doc. 169. "Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002). Remarkably, in their briefs, neither party mentions Federal Rule of Civil Procedure 37(e), which governs sanctions for the failure to preserve ESI. *Snider v. Danfoss, LLC*, 2017 WL 2973464, at *3 (N.D. Ill. July 12, 2017), *report and recommendation adopted*, 2017 WL 3268891 (N.D. Ill. Aug. 1, 2017).[5] Rule 37(e) permits sanctions "[i]f electronically stored information that should have been preserved in

---

[5]     Putnam's reliance on the Court's inherent authority to impose sanctions is "at odds with the Advisory Committee Notes to the 2015 amendment to Rule 37(e), which state that the rule 'forecloses reliance on inherent authority or state law to determine when certain measures should be used.'" *Worldpay, US, Inc. v. Haydon*, 2018 WL 5977926, at *3 (N.D. Ill. Nov. 14, 2018). "Rule 37(e) provides the sole authority for potential sanctions concerning the failure to preserve ESI." *Sonrai Systems, LLC v. Romano*, 2021 WL 1418405, at *8 n.13 (N.D. Ill. Jan. 20, 2021), *report and recommendation adopted*, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021). Thus, Putnam's motion is denied to the extent it seeks sanctions based on the Court's inherent authority.

the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  Breaking it down, Rule 37(e) sets out five prerequisites that must be met before any sanctions may be imposed: (1) the information at issue must be electronically stored information (ESI); (2) there must be anticipated or actual litigation; (3) it must be the case that because of the actual or anticipated litigation, the information should have been preserved; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI must be unable to be restored or replaced through additional discovery. *Worldpay, US, Inc.*, 2018 WL 5977926, at *3.

If the five prerequisites are all met, the Court evaluates whether the party seeking the ESI was prejudiced. *Snider*, 2017 WL 2973464, at *5.  When ESI has been lost because a party failed to take reasonable steps to preserve it, the court may: (1) upon finding prejudice, order measures no greater than necessary to cure the prejudice; or (2) upon finding of intent to deprive another party of information (in which case prejudice is inferred), presume the information was unfavorable, instruct the jury of this presumption, or enter dismissal or default judgment. Fed. R. Civ. P. 37(e)(1)-(2); *Snider*, 2017 WL 2973464, at *5.

Putnam contends that sanctions are justified on two grounds.  First, Putnam asserts that CaramelCrisp should be sanctioned for deleting hundreds of files from her laptop after her termination.  The initial determination the Court must make is a determination of when CaramelCrisp's duty to preserve ESI was triggered. *See* Fed. R. Civ. P. 37(e) (referring to ESI "that should have been preserved in the anticipation or conduct of litigation").  Here, the parties *agree* that Neumann's email to Nickels about a "litigation hold" created the duty for CaramelCrisp to preserve relevant evidence no later than March 22, 2019. Doc. 170 at 5; doc. 176 at 4.  The

12

record also shows that Nichels's email to Putnam on March 22, 2019 confirmed that CaramelCrisp believed Putnam had "violat[ed] [her] contract with CaramelCrisp and accused [her] of emailing confidential documents to [her]self before she was terminated." Doc. 176-1 at 30 (Putnam Decl.), ¶ 26. Thus, no later than March 22, 2019, CaramelCrisp had a duty to preserve all ESI on the electronic devices and drives in its possession that was relevant to reasonably foreseeable litigation between itself and Putnam. *Sonrai*, 2020 WL 1418405, at *11.

Putnam points out that at the time of her March 7, 2019 termination, CaramelCrisp had sole custody and control over her laptop, and she suggests it "could have made a forensic image, using best practices," Doc. 170 at 5. However, Putnam has offered no evidence showing that her termination itself was sufficient to put CaramelCrisp on notice that it should have anticipated litigation. *Does 1-5 v. City of Chicago*, 2019 WL 2994532, at *2 (N.D. Ill. July 9, 2019) (a duty to preserve is "based on the specific circumstances and facts and whether those facts give rise to a reasonable foreseeability that litigation will ensue."). Moreover, Putnam cites no authority, and the Court is aware of none, that suggests that an employer's duty to preserve ESI on an employee's computer arises whenever it terminates an employee. *See e.g. Banks v. Enova Financial*, 2012 WL 5995729, at *3 (N.D. Ill. Nov. 30, 2012) ("It would be too onerous a burden to place on all employers a duty to preserve any and all documents that form the basis for the termination of an employee because of the possibility that the terminated employee might sue."). Indeed, mere termination of an employee is not the prevailing standard for an employer's duty to preserve ESI. Rather, an employer has a duty to preserve evidence only when it "knew, or should have known, that litigation was imminent." *Fitzpatrick v. Nys*, 861 F. App'x 108, 110 (7th Cir. 2021). At the time Putnam was terminated, litigation was not imminent and Putnam has no evidence suggesting that CaramelCrisp reasonably should have known that it would be. Thus, the mere termination of

13

Putnam's employment, without more, was not enough to raise a duty to preserve the ESI stored on Putnam's laptop at the time of Putnam's termination. The record also establishes that after March 7, 2019, CaramelCrisp was reviewing Putnam's laptop, and it was not until March 22, 2019 that CaramelCrisp determined that Putman may have violated her contract. Accordingly, the Court finds Putnam has failed to show that CaramelCrisp had a duty to preserve during the time period between her termination and March 22, 2019, when the "litigation hold" email was sent. The duty to preserve evidence relevant to this case was thus triggered on March 22, 2019, and not upon Putnam's termination. It is with this date in mind that the Court analyzes the spoliation claim.

Buxton, Putnam's expert, claims that his forensic examination of Putnam's laptop, found a "significant number of files were deleted after March 8, 2019." Buxton Decl. at ¶ 13. According to Buxton, 412 files out of the 441 files in the Recycle Bin were deleted after March 8, 2019. But CaramelCrisp had no duty to preserve ESI until March 22, 2019, and Putnam has not shown that CaramelCrisp had a duty to preserve at the time these 412 files were deleted from her computer. That is to say, Putnam has offered no evidence that the 412 files in the Recycle Bin were deleted after March 22, 2019. As stated above, such a showing is a prerequisite to imposing sanctions for the destruction of this evidence. "If there were no duty to preserve ESI, then it need not have been preserved." *Snider*, 2017 WL 2973464, at *4; Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments (Rule 37(e) "does not apply when information is lost before a duty to preserve arises."). As a result, the Court cannot sanction CaramelCrisp under Rule 37(e) if there was no duty to preserve the ESI in the first place.

Buxton also asserts—without dispute—that seven files were deleted on March 27, 2019, after the duty to preserve arose. Buxton Decl. at ¶ 15. However, Putnam fails to show that the seven files that were deleted on March 27, 2019 contain information relevant to CaramelCrisp's

claims or her defenses in this case. "Rule 37(e) only applies to relevant ESI." *Snider*, 2017 WL 2973464, at *4; Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments ("Many court decisions hold that potential litigants have a duty to preserve *relevant* information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve.") (emphasis added). "Of course, limiting sanctions to the failure to preserve relevant ESI makes complete sense on many levels, including the lack of prejudice in the loss of irrelevant ESI and the lack of a need to even produce irrelevant ESI, let alone preserve it." *Snider*, 2017 WL 2973464, at *4. Often, "it is difficult for the party that seeks the ESI to establish prejudice because it does not know what was contained in the lost ESI." *Id*. at *5. Here, however, there is evidence regarding the particular nature of the seven lost files. Putnam does not dispute CaramelCrisp's assertion that Putnam's "expert has been able to identify the precise file names of all files that were deleted, accessed or modified and the precise date and time of when such deletion, access or modification occurred." Doc. 176 at 7; doc. 176-1 at 145.[6] Despite the fact that her expert has identified by name and file type the seven deleted files that were on her computer, Putnam does not claim that any aspect of her defense to this case relates to the content of any of the seven deleted files. Accordingly, the seven deleted files do not appear to be relevant evidence justifying sanctions for spoliation because Putnam was not prejudiced by the destruction of this evidence. Relatedly, Putnam has also not shown any intent to destroy ESI to warrant sanctions under Rule 37(e)(2). In other words, there is no evidence that CaramelCrisp acted with the intent to deprive Putnam of the use of the seven files in this litigation.

In addition to the deletions and as her second ground for seeking sanctions, Putnam contends that CaramelCrisp failed to follow "best practices" when working with her computer

---

[6] In addition, Buxton has identified the 412 files deleted from the Recycle Bin before the duty to preserve arose. Doc. 176-1 at 145.

after her termination. During his examination of the laptop, Buxton found: (1) "approximately 39,342 files had been accessed or changed after March 8, 2019"; (2) "CaramelCrisp failed to take steps to mitigate the 'garbage collection' process after March 8, 2019"; and (3) "when CaramelCrisp accessed the laptop after March 8, 2019, it continued to log on under Ms. Putnam's account." Buxton Decl. at ¶¶ 16, 17, 20. Putnam claims that CaramelCrisp's failure to follow best practices has effectively prevented her from investigating or challenging CaramelCrisp's breach of contract claim based on improper deletions which she denies and thus, she has been "irreparably prejudiced." Doc. 170 at 7-8, 10. The clear inference from the record is that Putnam is essentially complaining about Neumann's actions when he was reviewing her laptop after her termination and before it was stored in a locked desk drawer to be turned over to Berkeley. But the fundamental problem with Putnam's argument is that nothing in the record suggests that any of the complained-of actions occurred after the duty to preserve relevant evidence was triggered on March 22, 2019. Buxton Decl. at ¶¶ 16, 17, 20. While Putnam and her expert may have preferred the laptop remained untouched after March 8, 2019, the Federal Rules of Civil Procedure do not mandate that process. Accordingly, Putnam has not met her burden of showing that CaramelCrisp had a duty to preserve this ESI at the time of its alleged failures to follow best practices. *Snider*, 2017 WL 2973464, at *4.

Putnam also argues that by the time Berkeley took custody of the laptop on or around May 2, 2019, CaramelCrisp had been "irreparably altering it for months." Doc. 170 at 10; doc. 170-2 (Buxton Aff.), at ¶ 22. Because the laptop no longer reflected its original state of the last time Putnam had access to the device on March 7, 2019, Putnam contends that any observations or conclusions that Poirier or another Berkeley employee make about the state of the laptop at the time of Putnam's employment based upon the forensic image that Berkely created "carr[y] no

weight." *Id*. Based on this, Putnam seeks to preclude CaramelCrisp from introducing testimony from Poirier or any Berkeley employee regarding observations or conclusions they made about the state of the laptop at the time of Putnam's employment as a result of their analysis of the forensic image created on May 3, 2019.

Putnam's argument is misplaced for two reasons. *First*, she has not identified a single specific opinion offered by Berkeley regarding her *work-issued* laptop. Even if Berkeley took custody of Putnam's work-issued laptop on May 2, 2019, CaramelCrisp explains that Berkeley is an independent expert retained by CaramelCrisp to conduct a forensic examination of Putnam's *home* computer and other *personal* devices, including a "Twins" USB drive. Doc. 176 at 8. The expert disclosure deadline has passed, and CaramelCrisp says that Berkeley has not offered any observations regarding deletion or other modification of files from Putnam's work-issued laptop. *Id*. Without clear identification of any observations or conclusions by Berkeley about the state of the laptop at the time of Putnam's employment based upon their analysis of the forensic image created on May 3, 2019, the Court cannot evaluate her motion on this basis. *Second*, even if Putnam had identified a Berkeley opinion regarding her work computer at the time of her employment, with the exception of the seven lost files which Putnam has not shown are relevant, nothing in the record before the Court suggests that the ESI alterations on the laptop occurred after the duty to preserve evidence attached on March 22, 2019. Thus, no sanctions would be warranted under Rule 37(e) for any failure to follow best practices identified by Buxton.

While Putnam has not established that spoliation sanctions are appropriate, her challenge to the reliability of the forensic image of the laptop created by Berkeley on May 3, 2019 is preserved. She may raise the issue in advance of trial, such as through a motion in limine seeking to preclude CaramelCrisp from relying on the Berkeley forensic image of the laptop based on her

claim that "it was no longer a reliable copy and thus is no longer admissible evidence." Doc. 170 at 3. At trial, CaramelCrisp will bear the ultimate burden of proof on its breach of contract claim based on Putnam's alleged deletion of information from her laptop computer. Subject to admissibility by the district judge, Putnam will have the opportunity to present contrary evidence regarding deletion, including her claim that the forensic image that Berkeley created "carries no weight" because CaramelCrisp altered electronic data by failing to follow best practices. *Id*. at 10; *see also* Doc. 179-1 (Buxton Supplemental Aff.). Each party can certainly argue to the jury the significance of, and the inferences to be drawn from, these facts. The trier of fact can evaluate that issue in assessing whether CaramelCrisp carried its ultimate burden. In short, the issue presented here is really one relating to the admissibility and weight of the evidence offered by CaramelCrisp, rather than a discovery violation under Rule 37(e).

In sum, even assuming CaramelCrisp failed to follow best practices when it analyzed Putnam's work-issued laptop, any alteration to Putnam's laptop and deletion of files (other than the seven deleted files) occurred *prior* to CaramelCrisp's duty to preserve, and the precise identities of the seven deleted files are available. So in the end, Putnam complains mostly about ESI that CaramelCrisp had no duty to preserve and she has not identified any relevant ESI lost after the duty to preserve arose.

Finally, the Court denies CaramelCrisp's request for attorneys' fees, asserting that Putnam brought her sanctions motion in bad faith because she has "repeatedly admitted to deleting files and emails." Doc. 176 at 10. The Court finds that Putnam's prior statements about deletions and her sanctions motion are not inconsistent and do not demonstrate that her spoliation motion was brought in bad faith. In the briefing on her motion, Putnam did not deny that she deleted files. Rather, she claims she "deleted files in the normal course of her work" and "prior to her

18

termination, she deleted files with obsolete information to help her successors." Doc. 179 at 6. In her motion, Putnam asserts that CaramelCrisp's subsequent deletion and alteration of files on her laptop prevent her forensic expert from ascertaining the state of her work-issued laptop at the time of her termination, which is relevant to her defense to CaramelCrisp's breach of contract deletion claim. Cmplt. at ¶ 22. Because her positions are reconcilable, the Court concludes that the motion was not filed in bad faith.

### III. CONCLUSION

For the reasons set forth above, the Court recommends that Defendant's motion for sanctions [169] be denied as to her request for dismissal of CaramelCrisp's breach of contract claim based on improper deletions and her request for an adverse inference that that forensic image of her laptop created at time of her termination would demonstrate that she did not delete any information from the laptop. In all other respects, Defendant's motion [169] is denied. Further, Defendant's motion to strike [180] is denied. The parties have 14 days from the date of service of this Memorandum Opinion and Order and Report and Recommendation to file objections with the assigned District Judge. *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. Fed. R. Civ. P. 72(a); *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**SO ORDERED.**

Dated: April 26, 2022

_____
Sunil R. Harjani
United States Magistrate Judge