UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARAMELCRISP, LLC, | |
| Plaintiff, | |
| v. | Case No. 19-cv-02699 |
| AISHA PUTNAM | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff CaramelCrisp LLC sues former employee Aisha Putnam, alleging violation of the Defend Trade Secrets Act; violation of the Illinois Trade Secrets Act; and breach of contract. The parties have cross moved for summary judgment as to Count III, the breach of contract claim. For the reasons described below, the Court grants Defendant's motion [188] and denies Plaintiff's motion [192].

I.  Factual Background[1]

Plaintiff, Chicago-based business CaramelCrisp LLC (d/b/a Garrett Popcorn Shops), brings this lawsuit against its former Director of Research and Development, Defendant Aisha Putnam. [193] ¶ 5. Defendant served as R&D Director from February 2015 until the termination of her employment in March 2019. [193] ¶ 6. Early in her tenure in that role, on or about October 22, 2015, the parties entered into a Confidentiality and Non-Compete Agreement ("the 2015 Agreement"). [193] ¶ 7.

---

[1] For purposes of this motion, the Court draws the undisputed facts from the parties' Local Rule 56.1 Statements of Fact and Statements of Additional Fact. [190], [193], [196].

1

That agreement serves as the basis for Plaintiff's breach of contract claim.

The parties' dispute centers upon Defendant's access to Plaintiff's confidential information leading up to and following the termination of her employment. As a baseline, the parties do not dispute that Defendant had access to Plaintiff's formulas and specifications for its various popcorn products as part of her job. [196] ¶ 36. In particular, Defendant had access to one or more USB drives (equipped with biometric security features) containing the formulas and specifications. [196] ¶ 36–37. In addition, both parties acknowledge that prior to March 7, 2019, Defendant had a suspicion that she might be fired, based upon a delay in her annual review and conversations she had with colleagues. [196] ¶ 40.

Defendant admits that, throughout her employment, she transferred files between her work computer and her home laptop, so she could meet company expectations regarding evening and weekend work from home. [193] ¶ 6. Indeed, Plaintiff does not dispute that its CEO and Senior Vice President were both aware that Defendant worked from home on some occasions, and that doing so "could involve access to company information." [193] ¶ 6. Defendant also maintained a USB drive—known as the "Twins Drive"—that she used for a combination of personal and work-related purposes. [196] ¶ 38. On the Twins Drive, Defendant maintained a complete set of Plaintiff's formulas and specifications. [196] ¶ 38. Defendant updated those files on March 2, 2019, five days prior to her termination. [196] ¶ 42.

On March 5, 2019—two days prior to her termination—Defendant sent five emails from her work email address to her personal account, with a total of 43

2

attachments. [196] ¶ 43. The attachments contained information such as Plaintiff's popcorn formulas, batch pricing, product weights, production processes, development and distribution agreements, supplier information, customer service reports, and market research. [196] ¶ 43. The parties dispute Defendant's purpose for sending this information to herself and whether the 2015 Agreement permitted such action. [196] ¶ 43–44.

On March 7, 2019, Plaintiff's Senior Vice President and Vice President of Human Resources met with Defendant to inform her that she was, in fact, being fired. [193] ¶ 13. The parties dispute whether either of these executives requested that Defendant return the company files in her possession at that time. [193] ¶ 13. But all parties agree that she returned her laptop, key card, and biometrically secured USB drive during that encounter. [196] ¶ 45–46. She did not at that time, however, turn over or delete the confidential files saved on the Twins Drive or any of the files she had emailed to herself. [196] ¶ 48.

On March 22, 2019—two weeks after her termination—Defendant emailed one of Plaintiff's human resources employees about a compensation issue. [193] ¶ 14. In reply, the Vice President of Human Resources flagged a concern regarding the 2015 Agreement, namely, the company was aware of the emails containing confidential company information that Defendant sent to her personal account in the days leading up to her termination. [193] ¶ 14. Defendant replied, indicating her intent to comply with the 2015 Agreement. She forwarded the five emails to Plaintiff and informed Plaintiff that she had deleted them from her personal account. [193] ¶ 14; [196] ¶ 43,

3

53. She did not, at that time, tender the Twins Drive or delete Plaintiff's confidential information from that drive. [196] ¶ 54.

On March 28, 2019, Plaintiff's outside counsel emailed Defendant, stating that she "improperly accessed the Company's computer systems and took its trade secrets, including but not limited to, its recipes," and other highly "confidential and propriety information and wrongfully emailed that information" to her personal email account. [190-1] ¶ 27. The email further asserted that Defendant had "improperly deleted information contained on [her] computer in clear contravention" of the 2015 Agreement. [190-3] at 1. Counsel for Plaintiff also issued a series of demands, threatening legal action if Defendant failed to comply. [193] ¶ 17. Counsel demanded that Defendant:

> 1) tender "all of her electronic devices for an examination by a forensic expert retained by Plaintiff";
>
> 2) pay "the forensic expert's fee of $450 per hour";
>
> 3) sign an affidavit under penalty of perjury affirming that she had not "(a) …forwarded, provided, or otherwise disclosed the Company's confidential or trade secret information to any third parties; (b) after the completion of the forensic review and deletion, [Putnam did] not have in [her] possession, custody or control any of Garrett's confidential or trade secret information in any electronic or physical forms; and (c) [Putnam] will not take any further actions to attempt to obtain, use, or disseminate any of Garrett's confidential or trade secret information."
>
> 4) agree to "sign a 4 year non-compete agreement, wherein Putnam agrees not to engage, directly or indirectly, in any activity that is competitive in any way with Plaintiff's business."

[193] ¶ 17.

In response to these demands, Defendant tendered the Twins Drive to

4

Plaintiff's counsel. [193] ¶ 18. In addition, Defendant signed an affidavit affirming that she had not shared Plaintiff's confidential information or trade secrets with third parties, no longer had access to such information, and would not take any steps to obtain, use, or disseminate such information. [193] ¶ 19. But Defendant did not agree to the non-compete demand; thereafter, Plaintiff filed this lawsuit asserting that Defendant's conduct violated the confidentiality provisions of the 2015 Agreement.

Plaintiff also filed a Motion for a Temporary Restraining Order, [9], which the Court granted, in part, by agreement. [14]. Specifically, the Court ordered Defendant to submit her personal electronic devices to a third-party forensic analyst, who reviewed Defendant's devices using agreed-upon search terms. The analyst's search yielded a single document in a trash folder relating to Plaintiff's confidential information: a spreadsheet containing a January 2013 iteration of Plaintiff's recipes. [193] ¶ 23. Further, Plaintiff admits that it has no information that Defendant has at any time disclosed its confidential information to any third parties without permission to do so in connection with her job duties. [193] ¶ 25.

## II. Legal Standard

This Court grants a summary judgment motion only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this

determination, the Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255. But the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), for a mere "scintilla of evidence" will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

### III. Analysis

The Court considers the parties' cross-motions for summary judgment together. In her motion, Defendant asks the Court to grant partial summary judgment in her favor on Count III, the breach of contract claim, because Plaintiff has failed to provide factual support establishing breach of the contract or actual damages. [189]. In its reply and cross-motion, Plaintiff argues that its breach and damages allegations are supported by the undisputed facts and thus that the Court should grant partial summary judgment in its favor. [192]. The Court considers the breach and damages issues in turn.

#### A. Breach of Contract

Plaintiff claims that Defendant's termination triggered Defendant's duty under the 2015 Agreement to promptly turn over all confidential information to the company, and that no request for such information on the company's part was required. [192] at 8. Defendant, on the other hand, argues that this duty was not triggered until Plaintiff made a specific request for the information. [189] at 7–8. Both agree that Plaintiff did eventually make such a request, but dispute when that

6

occurred. Plaintiff asserts that its executives made the request during the termination meeting on March 7, 2019, while Defendant maintains that the request came first from Plaintiff's general counsel on March 28, 2019. [193] ¶¶ 13–15. Whether this factual dispute materially impacts the outcome of this claim depends upon whether a request from the company operates as a condition precedent to Defendant's duty to disclose. Thus, the Court begins by examining the terms of the 2015 Agreement.

When interpreting a contract governed by Illinois law (the applicability of which is not disputed here), the courts give unambiguous terms their clear and ordinary meaning. *Reynolds v. Coleman,* 527 N.E.2d 897, 902 (1988). In relevant part, the 2015 Agreement provides:

> If Putnam's employment with the Company is terminated by either Putnam or the Company, in that case, and at any time upon the request of the Company or any of the Company's Representatives, Putnam will promptly deliver to the Company all copies of the written Information in Putnam's possession, this includes electronic files of any kind, including but not limited to, computer files (whether stored on the Company's computer or another computer), disks, disk drives, zip drives, magnetic tape drives, internal hard drives, external hard drives, optical media storage, CD/DVD recordable drives, USB flash drives, any online storage (including but not limited to remote backup, cloud storage, or with any hosted solutions) or any other such storage or device which may come into use in the future.

[193] ¶ 9.

Plaintiff interprets the contractual language disjunctively to provide for two alternative conditions, each of which could independently trigger Defendant's duty to turn over confidential information, either: (1) the termination of Defendant's employment, whether by her own or the company's initiative; or (2) a request by the

7

company or its representatives "at any time." Defendant instead reads the two circumstances conjunctively as parts of a single condition such that the duty to return information would only be triggered if both: (1) her employment was terminated; and (2) Plaintiff made a request for the information. The use of the conjunctive "and" here is not determinative.[2] By including the language "in that case" after describing the Defendant's potential termination, the contract clearly conveys that there are two alternative scenarios, either of which could independently trigger Defendant's duty to turn over information.

This Court, however, need not resolve the parties' competing interpretations of the 2015 Agreement or whether the undisputed facts show compliance with the requirement of a prompt return of confidential materials.[3] This Court need not do so, because, to grant summary judgment in Plaintiff's favor, the Court must also find that Plaintiff can withstand Defendant's claim that the alleged damages allegations remain insufficient. As discussed below, Plaintiff cannot.

**B. Damages**

Defendant argues that even if her actions technically violated the 2015 Agreement, Plaintiff cannot prevail on its breach of contract claim because it has failed to produce any factual support for its damages claim. [189] at 8. Plaintiff

---

[2] Ordinarily, the word "and" should be read as conjunctive and "or" should be read as disjunctive. *Chicago Land Clearance Comm'n v. Jones,* 142 N.E.2d 800, 803 (1957). But courts have long recognized that the terms "and" and "or" can at times be interchangeable, when read in context. *See id.* ("[I]n order to effectuate the intention of the parties to a contract, where the intention is evident, the word 'and' may be construed to mean 'or.'").

[3] The undisputed facts indicate that Defendant's termination took place on March 7, 2019, and that she did not turn over the Twins Drive until April 1, 2019, in response to a threat of litigation. [193] ¶ 18.

responds that the forensic expert fees should be categorized as damages, that its showing of breach entitles it to nominal damages, and further that the language of the contract itself entitles it to permanent injunctive relief. [192].

The forensic expert in this case, Berkeley Research Group, served in a court-appointed function by agreement. Thus, the expert's compensation falls into the category of costs, *see* Fed. Rule Evidence 706, and it has no bearing upon the question of Plaintiff's alleged damages. Plaintiff admits that it has no other basis upon which to allege damages, [192] at 6, and thus turns to nominal damages in an effort to keep its claim alive.

But Plaintiff cannot establish an entitlement to nominal damages under Illinois law. Illinois courts require a showing of actual damages to maintain a claim for breach of contract, despite Plaintiff's attempt to cite cases to the contrary. Here, Plaintiff cites five cases, each of which remains inapposite for differing reasons. The first, *Allen Bros., Inc. v. Abacus Direct Corp.*, No. 01 C 6158, 2003 WL 21147985 (N.D. Ill. May 14, 2003), applies Colorado law. The second, *Orchard Park Plaza LLC v. Dolgencorp Inc.*, No. 04 C 4233, 2006 WL 1084298 (N.D. Ill. Apr. 18, 2006), relies upon Illinois law but does not support Plaintiff's theory that a showing of breach, without more, entitles it to nominal damages. Rather, *Orchard Park* held that nominal damages were appropriate where "the *existence* of damages has been proven, but the *amount* of such damages has not been established." *Id.* at *3 (emphasis added).

Plaintiff next cites *Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d

9

887, 891 (7th Cir. 1995), which applies Wisconsin law. The court in *Hydrite Chemical* does cite a Seventh Circuit decision applying Illinois law for the proposition that "Proof of liability is complete when the breach of contract is shown." *Stromberger v. 3M Co.,* 990 F.2d 974, 976 (7th Cir.1993). But *Stromberger* addresses fraud, not breach of contract, and mentions nominal damages only in dicta, as a point of comparison. Further, *Stromberger* in turn relies upon *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363 (7th Cir. 1990), which held under Wisconsin law that the "victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages." Here again, Plaintiff's citations stray away from Illinois law. Similarly, *Chronister Oil Co. v. Unocal Refining and Marketing*, 34 F.3d 462, 466 (7th Cir. 1994), purports to apply Illinois law but relies upon *Stromberger* for its nominal damages holding.

Plaintiff's fifth and final citation on the question of nominal damages references *Secure Data Technologies, Inc. v. Presidio Network Solutions*, No. 20-CV-00133, 2020 WL 5910168, at *3 n.2 (S.D. Ill. Oct. 6, 2020). That case, while again purporting to apply Illinois law, relies upon *Olympia Hotels*, *Chronister*, and Farnsworth's treatise on contracts, which is neither jurisdiction-specific, nor otherwise persuasive here. *See* E. Allan Farnsworth & Zachary Wolfe, *Farnsworth on Contracts* § 12.08 (4th ed. 2020).

Plaintiff does not provide a single citation grounded in Illinois law. While the law of Wisconsin and a variety of other jurisdictions might permit nominal damages awards based upon a showing of breach alone, Illinois law nonetheless requires a

10

showing of actual damages. *See U.S. Gypsum Co. v. LaFarge North America, Inc.*, 508 F.Supp.2d 601, 639 (N.D. Ill. 2007) (collecting cases). Merely showing that a contract has been breached "without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007). The "demonstration need not be precise," but "the plaintiff must have a sensible basis for its claim." *Transp. & Transit Assocs. V. Morrison Knudsen Corp.*, 255 F.3d 397 (7th Cir. 2001). Thus, Illinois law distinguishes between showing an entitlement to damages generally and providing a reasonable basis for the calculation of those damages. *See Brewer v. Custom Builders Corp.*, 356 N.E.2d 565 (Ill. App. Ct. 1976). Only if "the party having the burden of proof establishes entitlement to damages, yet fails to establish a proper basis from which those damages can be computed" will nominal damages be appropriate. *Schoeneweis v. Herrin*, 443 N.E.2d 36, 42 (Ill. App. Ct. 1982). Here, Plaintiff cannot show that it has been harmed by Defendant's alleged breach. Thus, it cannot show an entitlement to nominal damages and its action for breach of contract fails.

Finally, Plaintiff pivots to its request for injunctive relief, alleging that it has no adequate remedy at law and seeking a permanent injunction asking the Court to: (1) "Enter a temporary restraining order, and preliminary and permanent injunction against Putnam, enforcing the 2015 Agreement and prohibiting Putnam from accessing, retaining or disseminating any Information covered by the 2015 Agreement"; (2) "Order expedited discovery, including an examination of Putnam's electronic devices by a forensic expert to determine if she has retained or

11

disseminated any Information;" and (3) "Direct the forensic expert to permanently delete any Information found on Putnam's electronic devices, email, and cloud accounts."

To be sure, the 2015 Agreement contains clauses with conclusory language such as the following: "Remedies at law may be inadequate to protect the Company against any actual or threatened breach of this Agreement by Putnam, and, without prejudice to any other rights and remedies otherwise available to the Company, Putnam agrees to the granting of injunctive relief… without proof of actual damages." But "courts across the country have minimized the importance of such clauses," and have refused to allow this sort of contractual language to create a right to injunctive relief for which would not otherwise be a basis. *See Packaging Corp. of America, Inc. v. Croner*, 419 F.Supp.3d 1059, 1074 n.14 (N.D. Ill. 2020) (collecting cases).

Furthermore, this aspect of the dispute is moot. Here, the Court already granted Plaintiff's appropriate injunctive relief as part of the TRO, and any prospect of future harm remains too speculative. There is no evidence in the record showing that Defendant retains any other undiscovered confidential information or intends to use that information to Plaintiff's detriment in any unidentified future context.[4]

---

[4] Likewise, the record fails to show that Plaintiff lacks an adequate remedy at law—indeed, Plaintiff has two other live claims through which it will seek to address the conduct at issue.

## IV. Conclusion

Based upon the undisputed portions of the record, this Court grants summary judgment in Defendant's favor as to Count III.

Dated: January 26, 2023

Entered:

_____
John Robert Blakey
United States District Judge